UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMAR FOUNTAIN,

        Plaintiff,                      Case No. 2:22-cv-11343

v.

                                      Hon. Brandy R. McMillion
NOAH NAGY,                        United States District Judge

        Defendants.
_____/

**<u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS (ECF NO. 1)</u>**

Before the Court is Petitioner Amar Fountain's ("Fountain") Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Fountain was convicted following a jury trial in the Wayne County Circuit Court of (1) assault with intent to murder, (2) carjacking, (3) carrying a concealed weapon, (4) felon in possession of a firearm, (5) fourth-degree arson, and (6) possession of a firearm during the commission of a felon, second offense under Michigan law. ECF No. 1, PageID.1-2. Because the state court reasonably concluded Fountain's claims were without merit based on the evidence presented at trial, the Court **DENIES** Fountain's petition for writ of habeas corpus.

1

# I.

In 2016, Fountain was convicted after being tried jointly, but with separate juries, with his co-defendant Anthony Adams, Jr. ("Adams"). *See* ECF No. 1, PageID.11. The relevant facts of this case are best summarized and relied upon by the Michigan Court of Appeals[1]:

> A carjacking and robbery occurred in the early morning hours of December 5, 2015 at a Sunoco gas station in the City of Detroit. The incident was captured on surveillance footage. At approximately 4:18 a.m., the footage showed two men exit a sedan and approach an SUV. The SUV's driver, Michael Thomas ("Thomas"), was at the rear of his vehicle, putting air in the tire, when one of the men brandished a weapon and demanded his glasses. The man shot Thomas in the leg twice. Meanwhile, the other individual who had exited the sedan entered the SUV on the driver's side and appeared to try and start the vehicle. A passenger in the back seat, Michael Washington ("Washington"), shot the individual. The second individual staggered out of the SUV and returned to the sedan.
>
> At trial, Adams conceded that he was the individual who entered the SUV. His identity was never in question. However, Adams argued that he was drunk at the time and that his intoxication, along with the fact that he was shot in the neck, prevented him from remembering exactly what happened. The issue at trial for Adams was his intent and the extent of participation in the robbery and carjacking.
>
> For his part, Fountain argued that the prosecution failed to identify him as the individual who shot Thomas. Fountain's attorney pointed out that the surveillance footage was unclear and that none of the eyewitnesses identified Fountain as the perpetrator. In fact, the SUV's front seat passenger, Carlette Washington (a/k/a Carlette Bradley) ("Carlette"), actually chose a different individual from a photo array. The other rear seat passenger in the SUV, Aaron Lott ("Lott"),

---

[1] The facts are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

fled from the car when Adams entered the front seat and admitted that he never saw the individual who shot Thomas. The prosecutor countered that substantial circumstantial evidence confirmed Fountain's identity. In addition to the surveillance footage from the gas station was surveillance footage from Sinai Grace, where Adams was dropped off after being shot. The same sedan that was at the gas station is captured in footage from the emergency room entrance. This sedan, which was previously reported stolen, was later found burned. At the time of his arrest, Fountain had flash burns on his face and hands. Clothing similar to what the perpetrator wore in the gas station footage was seized from Fountain's girlfriend's home. The issue at trial for Fountain was whether he was properly identified as the individual with Adams when the robbery and carjacking took place.

*People v. Fountain*, No. 335034, 2018 WL 1734022, at * 1-2 (Mich. Ct. App. Apr. 10, 2018). The Michigan Court of Appeals affirmed the conviction but remanded for resentencing before a different judge since the trial judge's policy on sentencing was not in accordance with Michigan law. *Id.* at *8.

In April 2019, Fountain was resentenced as a fourth-offense habitual offender to 30 to 50 years' imprisonment for the assault with intent to murder and carjacking convictions, 1 to 5 years' imprisonment for the carrying of a concealed weapon, felon-in-possession, and fourth-degree arson convictions, and 5 years' imprisonment for the felony-firearm conviction. ECF No. 6-22, PageID.1737. The Michigan Court of Appeals affirmed the new sentences. *See People v. Fountain*, No. 349361, 2020 WL 6231211, at *1 (Mich. Ct. App. Oct. 22, 2020). The Michigan Supreme Court denied petitioner leave to appeal. *People v. Fountain,* 507 Mich. 902, 956 N.W.2d 206 (2021). Fountain now seeks a writ of habeas corpus to be relieved of

3

his sentence for the denial of a fair trial and due process under the federal constitution.

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs writ of habeas corpus petitions only for claims that were adjudicated on the merits in state court proceedings. *See Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014); 28 U.S.C. § 2254. Under the AEDPA, courts shall not grant a writ of habeas corpus unless the adjudication of the claim either "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Tolliver v. Sheets*, 594 F.3d 900, 915-16 (6th Cir. 2010) (quoting 28 U.S.C. § 2254(d)). To be eligible for federal habeas relief under § 2254, a state prisoner typically must first pursue the same claims under the same theory in state court. *Scott v. Houk*, 760 F.3d 497, 504 (6th Cir. 2014).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Jackson v. Cool*, 111 F.4th

4

689, 695 (6th Cir. 2024). And a state court decision unreasonably applies federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts." *Slaughter v. Parker*, 450 F.3d 224, 232 (6th Cir. 2006) (citing *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000)). In reviewing whether a state-court decision was "contrary to" or an "unreasonable application" of Supreme Court precedent, courts "look to the last reasoned state court decision" that adjudicated the relevant claim on the merits. *See Mack v. Bradshaw*, 88 F.4th 1147, 1154 (6th Cir. 2023).

The Supreme Court has emphasized that "an unreasonable application of federal law is different from an incorrect application of federal law." *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams*, 529 U.S. at 410). Therefore, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Woods v. Etherton*, 578 U.S. 113, 116-17 (2016) (quoting *Harrington*, 562 U.S. at 101).

## III.

Fountain seeks habeas relief on three grounds: (1) for the denial of due process of law for being convicted on insufficient evidence; (2) ineffective assistance of counsel for conceding Fountain's presence at the scene of the crime in counsel's

5

opening statement; and (3) errors in resentencing based on inaccurately scored sentencing guidelines. The Court will address each issue in turn.

### A. SUFFICIENCY OF EVIDENCE

First, Fountain alleges there was insufficient evidence presented at trial to convict him based on his identity as one of the perpetrators. ECF No. 1, PageID.19-22. However, the State argues there was sufficient circumstantial evidence to establish Fountain's guilt. ECF No. 5, PageID.68-71. This Court agrees with the State.

In the Sixth Circuit, courts must defer to the jury's rational conclusions drawn from the evidence and may not set aside the verdict rendered on insufficiency grounds unless no rational trier of fact could have agreed with the jury. *See Gibson v. Sheldon*, 659 F. App'x 871, 877 (6th Cir. 2016) (citing *Coleman v. Johnson*, 566 U.S. 650, 651 (2012); *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)). It is also beyond question that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. *See Brooks v. Rewerts*, No. 20-1496, 2021 WL 5107484, *2 (6th Cir. 2021) (citing *In Re Winship,* 397 U.S. 358, 364 (1970)). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). In other words,

6

could any rational jury have found, beyond a reasonable doubt, that Fountain was guilty of each element of the crime. This Court finds the jury did so.

Here, Fountain alleges the Michigan Court of Appeals failed to consider that the inferences are weak and cast more doubt on his involvement in the case. He argues the Court of Appeals used "boilerplate language" and "devoted no analysis to the issue[]." ECF No. 1, PageID.21-22. Not so. The Michigan Court of Appeals listed out the reasons why the evidence was sufficient to establish Fountain's conviction and rejected his claim:

> There was sufficient evidence to establish Fountain was with Adams when the crimes occurred. The fact that none of the eyewitnesses could specifically identify Fountain is not fatal in light of the significant circumstantial evidence placing him at the scene. The jury was able to view the surveillance footage from the gas station and observe the individuals involved. Only minutes after the crime, another surveillance camera showed Adams being dropped off at the hospital in the same Sebring sedan that was observed at the gas station. This same sedan was found intentionally burned and Fountain was treated for flash burn injuries. Items taken from Fountain's girlfriend's home contained Adams's DNA as well as the distinctive red pants of the other perpetrator. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that Fountain's identify was proven beyond a reasonable doubt.

ECF No. 6-23, PageID.1805; *People v. Fountain*, 2018 WL 1734022, at * 2.

Under Michigan law, "[t]he identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003) (citing *People v.*

*Turrell*, 25 Mich. App. 646, 181 N.W.2d 655, 656 (1970)).  Identity of a defendant can be inferred through circumstantial evidence.  *See Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002).  Eyewitness identification is not necessary to sustain a conviction.  *See United States v. Parks,* 278 F. App'x 527, 536 (6th Cir. 2008); *Dell,* 194 F. Supp. 2d at 648.

The Michigan Court of Appeals reasonably concluded that the circumstantial evidence in this case was sufficient for a rational trier of fact to conclude that Fountain was one of the perpetrators of the crimes.  A surveillance camera at the hospital showed the co-defendant being dropped off at the hospital in the same sedan that was present at the gas station where the robbery took place.  Since there was only one other suspect present at the robbery, the jury could infer petitioner's identity as the other perpetrator from the fact that the same vehicle observed at the gas station was used only minutes later to drop the co-defendant, who had been shot, off at the hospital.  ECF No. 6-17, PageID.1522-1524; *see, e.g., United States v. Pembrook*, 876 F.3d 812, 827 (6th Cir. 2017) (sufficient evidence established that defendants participated in robberies and firearms offense when surveillance videos showed the defendants and their vehicles together at the robbery scenes and the hotel), *judgment vacated on other grds*, 139 S. Ct. 68 (2018).  The sedan was later discovered burned

and Fountain ended up at the hospital with flash burn injuries.[2] ECF No. 6-17, PageID.1530.

Clothing seized from Fountain's girlfriend's home included the distinctive red pants worn by Adams' co-defendant and a blue jacket with the letter "P," which was identical to the jacket that the shooter wore in the gas station video surveillance footage. ECF No. 6-14, PageID.908, 984. Petitioner admitted to owning such a jacket in an earlier interview with the police but claimed it had been stolen. *Id.* at PageID.971. The fact that the clothing worn by Adams' co-defendant was discovered at petitioner's girlfriend's apartment further supported the jury's finding that Fountain was guilty of the offenses particularly since the pants and jacket were distinctive and unique. *See United States v. Rogers*, 861 F. App'x 8, 21 (6th Cir. 2021), *cert. denied sub nom. Ford v. United States*, 142 S. Ct. 1422 (2022); *United States v. Donald*, 86 F. App'x 939, 944 (6th Cir. 2004). Items containing co-defendant Adams' DNA were also recovered from the girlfriend's house. Petitioner's association with the co-defendant at the time of the robbery further establishes his identity as Mr. Adams' accomplice. *See United States v. Sherer*, 770 F.3d 407, 412 (6th Cir. 2014).

---

[2] This also can be proven true based on circumstantial evidence if the causal chain between the arson and the burns appears unbroken. *See, e.g., United States v. Pritchard*, 964 F.3d 513, 521 (6th Cir. 2020) (citing *United States v. Wiegand*, No. 93-1735, 1994 WL 714347, at *1-3 (6th Cir. Dec. 22, 1994) (per curiam)). Other courts have also found similar burns to establish identity as the arsonist of a vehicle. *See, e.g., United States v. Gonzalez-Sanchez*, 825 F.2d 572, 582 (1st Cir. 1987).

When considering a challenge to the sufficiency of the evidence to convict, circumstantial evidence is given the same weight as direct evidence. *See Carter v. Vashaw*, 627 F. Supp.3d 853, 862 (E.D. Mich. 2022) (citing *United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993)). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (internal quotation omitted); *see also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008) ("A conviction may be sustained based on nothing more than circumstantial evidence.").

Further, this Court does not have the authority to overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim. Instead, habeas relief is only warranted if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011) ("Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

And because there were multiple pieces of evidence to establish petitioner's identity as the shooter, this Court finds that the Michigan Court of Appeals did not unreasonably apply *Jackson v. Virginia* in rejecting petitioner's sufficiency of evidence claim and Fountain is not entitled to relief on this claim. *See, e.g., Moreland v. Bradshaw*, 699 F.3d 908, 919-21 (6th Cir. 2012). Consequently, Fountain's claim is without merit.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Fountain's second allegation is that his counsel was ineffective for conceding his guilt to the charges, by admitting to Fountain's presence when the robbery took place during opening statements.[3] The State, however, counters that Fountain's defense counsel's conduct fails to meet the standard under *Strickland* for an ineffective assistance of council claim. The Court agrees with the State.

To establish a claim for ineffective assistance of counsel, a habeas petitioner must show that his counsel's performance was constitutionally deficient, and that counsel's deficient performance was prejudicial. *Chase v. MaCauley*, 971 F.3d 582, 592 (6th Cir. 2020) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). If an alleged error was not "prejudic[ial]," a federal court need not determine whether counsel's performance was constitutionally deficient. *McMeans v. Brigano*, 228

---

[3] The Court also notes that in Fountain's petition, no record cite was included to support this allegation.

11

F.3d 674, 686 (6th Cir. 2000). To be entitled to relief on a claim of ineffective assistance of counsel raised in habeas proceedings, Fountain had to show both that his counsel provided deficient assistance and that there was prejudice as a result. *Harrington v. Richter*, 562 U.S. 86, (2011); *Scott v. Houk*, 760 F.3d 497, 507 (6th Cir. 2014).

With respect to the first prong, the petitioner must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 687. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Id.* at 689. Under the second prong, Fountain must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Here, Fountain has the burden to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009). Fountain alleges that under *Wiley v. Sowders*, 647 F.2d 642 (6th Cir. 1981), his counsel was ineffective. This Court disagrees. On appeal, the Michigan Court of Appeals rejected this argument:

> Fountain argues that he was denied the effective assistance of counsel during voir dire and opening statements when his attorney appeared to concede his presence at the gas station. "Mere presence"

12

> was not Fountain's defense at trial and he argues that it made no sense to have two diametrically opposed positions presented to the jury.
>
> After reviewing the record, we do not find that counsel's statements conceded Fountain's presence at the scene of the crime. Even if Fountain could demonstrate that counsel's performance fell below an objective standard of reasonableness, he cannot demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. In addition to the surveillance footage from the gas station and the hospital, there was overwhelming circumstantial evidence that Fountain was the perpetrator, as previously discussed.

*People v. Fountain*, 2018 WL 1734022, at *5.

An attorney may not admit his client's guilt contrary to the client's earlier entered not guilty plea, unless the defendant unequivocally agrees to and understands the consequences of his admission. *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1095 (E.D. Mich. 2004) (citing *Wiley v. Sowders,* 647 F.2d 642, 649 (6th Cir. 1981)). In *Wiley,* the defense counsel was found to be ineffective because both defense attorneys repeatedly stated in *closing argument* that the defendant was "guilty," "guilty as charged," and "guilty beyond a reasonable doubt." *Id.* The counsel's arguments represented the "precise admission" that defendant had rejected in his earlier not guilty plea. *Wiley,* 647 F. 2d at 649-50. But in this case, Fountain alleges that the admission of his presence at the scene of the crime occurred in opening statement. The Court finds this argument without merit.

First, the trial court instructed the jury that "[o]pening statements are not evidence. They're merely just . . . like road maps or a preview that you see at a

13

movie." ECF No.6-13, PageID.586. Second, trial counsel did not concede Fountain's guilt. She brought up the concept of mere presence as a hypothetical question during *voir dire* and she did this simply in response to the prosecutor's questions on the same subject. ECF No. 6-13, PageID.507-508.

> Trial counsel later made the following remarks in her opening statement:
>
> And I gave a hypothetical talking about if you go someplace with someone and you haven't discussed committing a crime and that person commits a crime, are you merely present or are you aiding in some way? If you don't know about it, you can't be aiding it."

*Id.* at PageID.604.

A review of the comments shows that counsel never conceded Fountain's guilt or even admitted to him being present at the crime scene. Counsel merely asked this as a hypothetical question. The use of hypothetical questions or remarks by defense counsel does not amount to a concession of guilt and amounts to nothing more than conclusional and speculative allegations. *See Jackson v. Houk*, 687 F.3d 723, 742-43 (6th Cir. 2012); *Gibson v. Beard*, 165 F.Supp.3d 286, 311 (E.D. Pa. 2016); *Yowell v. Thaler*, 545 F. App'x 311, 315 (5th Cir. 2013). Therefore, the Court finds Fountain is not entitled to relief on his second claim.

## C.   SENTENCING GUIDELINES

Fountain's final claim for habeas relief is that the state trial court incorrectly scored several offense variables under the Michigan Sentencing Guidelines. However, the Court finds Fountain's allegation is not a cognizable claim for federal

14

habeas review because "federal habeas corpus relief does not lie for error of state law." *See Kissner v. Palmer*, 826 F. 3d 898, 902 (6th Cir. 2016). Errors in the application of state sentencing guidelines cannot independently support habeas relief. *Id.* at 904. None of Fountain's federal due process rights are violated in claiming an improper departure above the state sentencing guidelines range and does not entitle him to habeas relief. *See Austin v. Jackson*, 213 F. 3d 298, 301 (6th Cir. 2000). Consequently, the Court finds this argument without merit to grant relief.

D.   **CERTIFICATE OF APPEALABILITY**

Before Mr. Fountain may appeal this Court's dispositive decision, "a circuit justice or judge" must issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because the Court has rejected Mr. Fountain's habeas claims on the merits, to satisfy § 2253(c)(2), petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted). Given that the foregoing analysis of petitioner's claims was straightforward, the Court believes that no reasonable jurist would argue that Fountain should be granted habeas relief on

his claims. Accordingly, a certificate of appealability will not issue from this Court. *Davis v. Rapelje*, 33 F. Supp.3d 849, 865 (E.D. Mich. 2014). However, if Fountain chooses to appeal the Court's decision, he may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V.

Accordingly, the Court **DENIES** Fountain's Petition for Writ of Habeas Corpus (ECF No. 1) and **DENIES** him a certificate of appealability. Petitioner is granted leave to appeal *in forma pauperis*.

**IT IS SO ORDERED.**

Dated: November 18, 2024  
  Detroit, Michigan

s/Brandy R. McMillion  
BRANDY R. MCMILLION  
United States District Judge